UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| JOE HAND PROMOTIONS, INC.,<br>Plaintiff,<br>- vs -<br>JOLLY PARTNERS, LLC, *et al.*,<br>Defendants. | CASE NO.: 6:19-cv-00476-ADA |

**PLAINTIFF, JOE HAND PROMOTIONS, INC.'S MOTION FOR FINAL DEFAULT JUDGMENT AND SUPPORTING BRIEF**

**TABLE OF CONTENTS**

A. NATURE AND STAGE OF THE PROCEEDING .......... 2

B. STATEMENT OF THE ISSUES AND SUMMARY OF THE ARGUMENT .......... 3

C. UNDISPUTED EVIDENCE .......... 4

D. UNDISPUTED FACTS .......... 5

E. ARGUMENTS & AUTHORITIES .......... 7

1. THE COMMUNICATIONS ACT .......... 7
2. STATUTORY DAMAGES UNDER 47 U.S.C. § 605(e)(3)(C)(i)(II) .......... 9
3. DAMAGES FOR WILLFUL ACT UNDER 47 U.S.C. § 605(e)(3)(C)(ii) .......... 14

F. ATTORNEY'S FEES AND COSTS .......... 17

G. CONCLUSION .......... 17

H. PRAYER .......... 18

**PLAINTIFF, JOE HAND PROMOTIONS, INC.'S MOTION FOR**
**FINAL DEFAULT JUDGMENT AND SUPPORTING BRIEF**

## A. NATURE AND STAGE OF THE PROCEEDING

1. On August 16, 2019, Plaintiff, JOE HAND PROMOTIONS, INC. (hereinafter "Plaintiff" or "JHP") sued Defendants, (1) JOLLY PARTNERS, LLC, d/b/a CASA DE LEON, (2) LEONA SOCIAL CLUB NON PROFIT CORPORATION, d/b/a CASA DE LEON, (3) JAYSON E. EOFF, and (4) MOLLY T. GOMEZ complaining of the unauthorized and illegal interception and/or receipt and exhibition of the audiovisual presentation of the *Floyd Mayweather Jr. vs. Conor McGregor* boxing match, including all undercard bouts and commentary, on August 26, 2017 (hereinafter, "Program") at the establishment known as Casa De Leon located at 827 Highway 977/827 FM 977, Leona, Texas 75850 (hereinafter, "Establishment"), a commercial business, without paying the sublicense fee to Plaintiff. *See* Doc. No. 1.

2. On request, the Deputy Clerk entered default against Defendants, (1) Jolly Partners, LLC, d/b/a Casa De Leon, (2) Leona Social Club Non Profit Corporation, d/b/a Casa De Leon, and (3) Molly T. Gomez. *See* Doc. No. 14

3. To date, Plaintiff has been unable to locate and serve Defendant, Jayson E. Eoff. Accordingly, with this Motion, Plaintiff filed its Notice of Partial Dismissal without Prejudice as to Defendant, Jayson E. Eoff.

4. By this Motion, JHP hereby seeks the entry of a final default judgment against Defendants, (1) Jolly Partners, LLC, d/b/a Casa De Leon, (2) Leona Social Club Non Profit Corporation, d/b/a Casa De Leon, and (3) Molly T. Gomez (hereinafter referred to collectively as "Defendants") for statutory damages under the Federal Communications Act of 1934, as amended.[1]

## B. STATEMENT OF THE ISSUES AND SUMMARY OF THE ARGUMENT

5. Plaintiff pleaded piracy claims against Defendants under the Federal Communications Act of 1934, as amended (the "Communications Act"). The Communications Act protects against the piracy of radio and television signals. *See* 47 U.S.C. §§ 553[2] and 605.[3]

6. "In general, 'piracy' refers to the decoding or decryption of scrambled programming without the authorization of the programmer nor payment for the programming." *U.S. v. Scott*, 783 F. Supp. 280, 281 (N.D.Miss. 1992)(reviewing the legislative history of § 605(e)(4)).

[1] In its Complaint, Plaintiff asserted piracy claims under the Federal Communications Act of 1934, as amended, 47 U.S.C. 605 et seq. or, alternatively, 47 U.S.C. § 553, et seq. and claims for copyright infringement under the Copyright Act of the United States. In this Motion, Plaintiff moves for final default judgment solely under Title 47 U.S.C. § 605.

[2] 47 U.S.C. § 553 provides:

> No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

[3] 47 U.S.C. § 605 provides:

> . . . No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

7. By virtue of their default, Defendants admitted to committing piracy against Plaintiff.

8. By this Motion, Plaintiff seeks the entry of a final default judgment against Defendants, jointly and severally, for $60,000.00 in statutory damages for their willful violation of 47 U.S.C. § 605, plus interest, costs, and attorney's fees.

### C. UNDISPUTED EVIDENCE

9. In addition to the admitted-through-default allegations in Plaintiff's Complaint [*See* Doc. No. 1 and Doc. No. 14], Plaintiff provides the following evidence to support a Default Judgment against Defendants:

Exhibit A: Attached as **Exhibit A** and incorporated by reference are

1. True and correct copies of the Certificate of Formation and Assumed Name Certificate for the assumed name of "Casa De Leon" for Jolly Partners, LLC from the Texas Secretary of State;

2. A certified copy of the Assumed Name Certificate for the assumed name of "Casa De Leon" for Jolly Partners, LLC from the Williamson County Clerk;

3. True and correct copies of the Certificate of Formation, Assumed Name Certificate for the assumed name of "Casa De Leon" for Leona Social Club Non Profit Corporation, and the Texas Franchise Tax Public Information Report for Report Year 2017 (taxpayer number redacted) for Leona Social Club Non Profit Corporation from the Texas Secretary of State;

4. A certified copy of the Texas Limited Sales, Excise, and Use Tax Permit inquiry (taxpayer number redacted) issued to Jolly Partners, LLC from the Texas Comptroller of Public Accounts; and

5. A true and correct copy of the Business Records Affidavit and permits issued to Leona Social Club Non Profit Corporation for the Establishment from the Texas Alcoholic Beverage Commission.

Exhibit B: Attached as **Exhibit B** and incorporated by reference is the Declaration of Joe Hand, Jr., President of Plaintiff, Joe Hand Promotions, Inc., forming the basis for an award of statutory damages under the Communications Act. Additionally, the Declaration includes the following exhibits:

1. A true and correct copy of the Commercial Licensing Agreement (redacted) for the Program, providing Plaintiff with the exclusive right to license the exhibition of the Program to commercial establishments such as Defendants' Establishment, attached as **Exhibit B(1)** and incorporated by reference;

2. A true and correct copy of the Rate Card for the Program, attached as **Exhibit B(2)** and incorporated by reference; and

3. A true and correct copy of the Declaration of Ryan R. Janis along with screen shots and videos, attached as **Exhibit B(3)** and incorporated by reference.

Exhibit C: Attached as **Exhibit C** and incorporated by reference is the Affidavit for Attorney's Fees and Costs. Additionally, the Affidavit includes the following exhibit:

1. True and correct copies of the service of process invoices for Defendants, attached as **Exhibit C(1)** and incorporated by reference.

## D. UNDISPUTED FACTS

10. Pursuant to Plaintiff's Complaint[4] and the evidence presented, the following facts are established as a matter of law by default:

a. Jolly Partners, LLC ("Jolly Partners") conducted business as Casa De Leon and owned, operated, maintained, and controlled the Establishment on the date of the Program. *See* Plaintiff's Complaint, Doc. No. 1 at ¶ 2 and Exhibit A.

b. Leona Social Club Non Profit Corporation ("Leona Social Club") conducted business as Casa De Leon and owned, operated, and maintained the Establishment on the date of the Program. *See* Plaintiff's Complaint, Doc. No. 1 at ¶ 3 and Exhibit A.

c. On the date of the Program, Molly T. Gomez was a member, manager, officer, director, and/or principal of the entities owning and operating the Establishment, had a right and ability to supervise the activities of the Establishment, and had an obvious and direct financial interest in the activities of the Establishment. *See* Plaintiff's Complaint, Doc. No. 1 at ¶ 5 and Exhibit A.

[4] By Defendants' default, the Court should accept the well pleaded allegations of facts in the Complaint. *See* e.g., *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200 (5th Cir. 1975).

d. Plaintiff is in the business of marketing and licensing commercial exhibitions of pay-per-view prizefight events. *See* Exhibit B at ¶ 4.

e. Plaintiff possessed the proprietary rights to exhibit and sublicense the right to exhibit the Program. *See Id.* and Exhibit B(1).

f. By agreement, Plaintiff was licensed to exhibit the Program at closed-circuit locations such as racetracks, bars, nightclubs, restaurants, and other commercial establishments throughout the State of Texas. *See* Plaintiff's Complaint, Doc. No. 1 at ¶¶ 9-11, Exhibit B at ¶ 4, and Exhibit B(1).

g. In Texas, the Program was legally available to commercial establishments such as the Establishment only through an agreement with Plaintiff. *See* Exhibit B at ¶ 4 and Exhibit B(1).

h. In order to safeguard against the unauthorized interception and/or receipt of the Program, the interstate satellite transmission of the Program was electronically coded or scrambled and was not available to or intended for the free commercial use of the general public. If a commercial establishment was authorized by Plaintiff to receive the Program, Plaintiff authorized the receipt of the signal(s) or authorized the establishment's cable or satellite provider to release the Program to the establishment, depending upon the establishment's equipment and provider. *See* Exhibit B at ¶¶ 5-6, 8, 10.

i. Plaintiff did not notify the Establishment's cable or satellite provider to unblock the Establishment's account or to release the Program to the Establishment to allow the Establishment to receive and broadcast the Program to its patrons. Plaintiff did not authorize the Establishment to receive and exhibit the Program to its patrons. *See* Exhibit B at ¶ 11.

j. Authorized commercial establishments that contracted with Plaintiff were required to pay to Plaintiff a sublicense fee to receive the Program. This sublicense fee is based on the capacity/fire code occupancy of the establishment. Based on Mr. Janis's count from the video, the Establishment had an approximate capacity of at least 48 people. According to the Rate Card, the fee for a legal broadcast would have been $3,700.00. In this case, the commercial sublicense fee to broadcast the Program was not paid. *See* Exhibit B at ¶¶ 8-9, Exhibit B(2), and Exhibit B(3).

k. As shown in Mr. Janis's declaration, Mr. Janis obtained screen shots and videos from the internet and social media showing that the Establishment broadcasted the Program to its patrons, after they purchased tickets for $35 each and $10 each for children ages 7 and up, on multiple televisions counting approximately 48 people on one of the videos. *See* Exhibit B at ¶ 9 and Exhibit B(3).

l. Defendants could not have obtained the transmission of the Program had Defendants not undertaken specific wrongful actions to intercept and/or receive and exhibit the telecast of the Program. *See* Exhibit B at ¶¶ 10-12.

## E. ARGUMENTS & AUTHORITIES

### 1. THE COMMUNICATIONS ACT

11. The unauthorized interception and broadcast of cable or satellite transmissions violates 47 U.S.C. §§ 553 or 605. Accordingly, unlawful interception and/or receipt and broadcast of the signal of the Program are violations of the Communications Act.

12. "The FCA [Federal Communication Act] is a strict liability statute, and the plaintiff is required only to prove the unauthorized exhibition of the intercepted transmission." *See Joe Hand Promotions, Inc. v. Macias,* Cause No. 4:11-cv-01773 (S.D.Tex. March 19, 2012) (Memorandum and Order)(Atlas, N.)(referencing *KingVision Pay-Per-View, Ltd. v. Lake Alice Bar*, 168 F.3d 347, 349 (9th Cir. 1999)(the finding that bar had, without authorization, shown a preliminary bout required judgment in favor of the plaintiff)).

13. On the date of the Program, Jolly Partners and Leona Social Club conducted business as Casa De Leon and owned, operated, maintained, and controlled the Establishment; on the date of the Program, Molly T. Gomez was a member, manager, officer, director, and/or principal of the entities owning and operating the Establishment with a right and ability to supervise the activities of the Establishment; the Program was exhibited at the Establishment without authorization from or payment to Plaintiff, the exclusive holder of the commercial distribution license. *See* Plaintiff's Complaint, Doc. No. 1 at ¶¶ 1-3, 5, 9-18, 20-21, 23-24, Exhibit A, Exhibit B at ¶¶ 4-12, Exhibit B(1), and Exhibit B(3).

14. In order for an unauthorized commercial establishment to receive a broadcast such as the Program, there must be some wrongful action such as employing residential cable and satellite equipment to circumvent commercial licensing requirements or engaging in similar illegal conduct to steal programming through internet streaming for residential/non-commercial use only. *See* Exhibit B at ¶¶ 10-12; *Joe Hand Promotions, Inc. v. Maupin*, 2018 WL 2417840, at *6 (E.D.N.Y. May 25, 2018)("exhibitions of television programs broadcasted via the internet could serve as a basis for liability under Section 553 and 605"); *see also J&J Sports Productions, Inc. v. Enola Investments L.L.C.*, Cause No. 4:17-cv-02893 (S.D.Tex. May 30, 2019)(Findings of Fact & Conclusions of Law)(Hittner, D.)(finding lability under 47 U.S.C. § 605); and *Time Warner Cable v. Googies Luncheonette, Inc.,* 77 F. Supp.2d 485, 490 (S.D.N.Y. 1999)(when finding willfulness the court stated, "There can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain. Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems").

15. Defendants' default alone establishes liability as ". . . . conduct on which liability is based may be taken as true as a consequence of the default." *Frame v. S-H, Inc.*, 967 F.2d 194, 205 (5th Cir. 1992)(citations omitted).

16. Given the above, it is clear that Plaintiff has met its burden with respect to liability in this matter. In this Motion, Plaintiff submits evidence to support damages under the Communications Act, specifically seeking damages under 47 U.S.C. § 605.

17. In 1988, in an effort to further deter piracy, Congress amended the Communications Act to provide for more severe penalties for violations. "The Committee wants to give both prosecutors and civil plaintiffs the legal tools they need to bring piracy under control. The Committee commends and encourages inter-industry efforts to deal with piracy, and believes the new remedies and increased penalties adopted through this provision will contribute to these important efforts." *See U.S. v. Scott*, 783 F. Supp. 280, 282 (N.D.Miss. 1992)(citing 1988 *U.S. Code Cong. & Admin. News* 5577, 5657-58).

**2. STATUTORY DAMAGES UNDER 47 U.S.C. § 605(e)(3)(C)(i)(II)**

18. As its first basis for relief, Plaintiff requests statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II). *See Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 850 (11th Cir. 1990).[5]

19. Pursuant to the Communications Act, the amount of statutory damages to which Plaintiff is entitled for each violation shall be not less than $1,000.00 and not more than $10,000.00 under 47 U.S.C. § 605(e)(3)(C)(i)(II). For the reasons set forth herein, Plaintiff seeks statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) against Defendants in the amount of $10,000.00 for Defendants' violation of the Communications Act in connection with the Program.

[5] It is in the Plaintiff's discretion whether to elect to receive actual or statutory damages. *Id. See also*, *Entertainment by J&J, Inc. v. Al-Waha Enterprises, Inc.,* Civil Action No. H-01-2514, 2002 U.S. Dist. LEXIS 16247, at *17 (S.D.Tex. July 24, 2002) ("A majority of the courts that have dealt with a violation of both sections of the FCA award damages only under Section 605....")(citations omitted).

20. Statutory damages are appropriate where actual damages are difficult to prove. *See Lauratex Textile Corp. v. Allton Knitting Mills, Inc.,* 519 F. Supp. 730, 732 (S.D.N.Y. 1981); *Lottie Joplin Thomas Trust v. Crown Publishers, Inc.*, 592 F.2d 651, 657 (2d Cir. 1978). The lack of adequate proof of any particular element causes the Court to rely, within its discretion, on the statutory limitations. *See F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952).

21. As stated above, and supported by the evidence attached to this Motion and incorporated by reference, on the date of the Program, Defendants, themselves and/or through their agents, servants, and/or employees, received the telecast of the Program, broadcasted the Program to the patrons at Defendants' Establishment, and broadcasted the Program to the patrons at Defendants' Establishment without paying any sublicense fees to Plaintiff. *See* Doc. No. 1 at ¶¶ 1-3, 5, 9-18, 20-21, 23-24, Exhibit A, Exhibit B, Exhibit B(1), Exhibit B(2), and Exhibit B(3). The willfulness of Defendants' violation is also shown by the numerous advertisements and their selling of tickets to watch the Program. *See* Exhibit B(3).

22. In the instant case, as more fully discussed below, it would be impossible to determine the full extent of the profits lost by Plaintiff and the additional damages sustained by Plaintiff because of Defendants' unlawful actions. Accordingly, Plaintiff elects to receive statutory damages.

23. Because the statute defining statutory damage awards for violations of the Copyright Act of 1976, 17 U.S.C. § 101 et seq. (the "Copyright Act") is analogous to the Communications Act,[6] its case law is influential in analyzing the amount of statutory damages to which Plaintiff is entitled.[7]

24. Applying the courts' analysis from their decisions under the Copyright Act, the lost income from the sale of the Program to Defendants' Establishment represents only a starting place for the determination of the amount of damages to which Plaintiff is entitled as a result of Defendants' wrongful acts.[8] Factors to consider in determining a statutory damage award include: (1) the "fair market value of the rights infringed," (2) the "revenue lost by the plaintiff and profits gained by the defendant," (3) "the infringer's state of mind" and (4) "deterrence of future infringement." *See Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522, 1544

[6] 17 U.S.C. § 504(c)(1) provides:

> Statutory damages. (1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.

[7] According to the Supreme Court of the United States, when determining the applicable statutory damage award under the Copyright Act, the amount of profits lost by the copyright holder is not the only criteria for a Court to consider. *Woolworth*, 344 U.S. at 233. Rather, "a rule of liability which merely takes away the profits from an infringement would offer little discouragement to infringers. It would fall short of an effective sanction for enforcement of the copyright policy. The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct. The discretion of the court is wide enough to permit a resort to statutory damages for such purposes. Even for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within statutory limits to sanction and vindicate the statutory policy." *Id*. at 233.

[8] *See*, e.g., *Entertainment by J&J, Inc. v. Al-Waha Enterprises, Inc*., 219 F. Supp.2d 769, 776 (S.D. Tex. 2002) ("Merely requiring Al-Waha to pay the price it would have been charged to obtain legal authorization to display the [Program] does nothing to accomplish this objective of the statute. There would be no incentive to cease the violation if the penalty were merely the amount that should have been paid.")(citations omitted).

(S.D.N.Y. 1991). For an establishment with a capacity/fire code occupancy of between 0-100 people, the sublicense fee would have been $3,700.00. *See* Exhibit B at ¶ 8, Exhibit B(2), Exhibit B(3).

25. Plaintiff should receive additional compensation as it has been deprived of the "value, benefits and profits derived" from the unauthorized broadcast of the Program to Defendants' Establishment and its patrons as well as the value of "business investment, business opportunities, reputation, and goodwill," in addition to the lost revenue which would have been derived from the delivery and exhibition of the Program to Defendants' Establishment and its patrons. *See American Television and Communications Corp. v. Floken, Ltd.*, 629 F. Supp. 1462, 1466 (M.D.Fla. 1986).

26. Types of damages suffered by Plaintiff and factors related to same include the following:

a. Plaintiff loses customers, which are unwilling and financially unable to compete with those unauthorized commercial establishments, which steal sports and other closed-circuit programming.

b. When the unauthorized commercial establishment advertises the availability of the stolen programming, the number of patrons at the unauthorized commercial establishment likely increases and, as a result, Joe Hand Promotions, Inc. and the authorized commercial establishments suffer additional losses.

c. Because some unauthorized commercial establishments offer the stolen programming to their patrons for no fee or for a fee which is less than the authorized establishments, the legitimate commercial establishments with the right to broadcast closed-circuit programming attract fewer paying customers. As a result, the authorized commercial establishments fail to recover the sublicense fees paid, suffer the loss of patrons, and/or incur financial loss.

d. Theft of closed-circuit broadcasts, such as the Program, by unauthorized commercial establishments such as Defendants' Establishment, adversely affects both Plaintiff and its customers. Plaintiff pays substantial fees to obtain the right to sublicense the broadcast of closed-circuit programming to authorized commercial establishments. Plaintiff's primary source of revenue is the sublicense fees which it charges to authorized commercial establishments for the right to broadcast closed-circuit sports and entertainment programming such as the Program.

*See* Exhibit B at ¶¶ 5, 13-15.

27. Each visitor of Defendants' Establishment is lost as a future patron of authorized broadcasts. *See Cox Cable Cleveland Area, Inc. v. King*, 582 F. Supp. 376, 381 (E.D. Ohio 1983). Plaintiff suffers ongoing loss to its goodwill and reputation and loss of its right and ability to control and receive payment for the transmission, because patrons viewing the pirated program at Defendants' Establishment would have become patrons of an authorized establishment thereby increasing the value of the Program and Plaintiff's business opportunities. S*ee* Exhibit B at ¶¶ 5, 13-15; *see also Quincy Cablesystems, Inc. v. Sully's Bar, Inc.*, 640 F. Supp. 1159, 1161 (D. Ma. 1986).

28. The continued viability of Plaintiff's business relies upon the willingness and ability of commercial establishments to pay sublicense fees for the right to broadcast closed-circuit sports and entertainment programming such as the Program. *See* Exhibit B at ¶¶ 5, 13-15. If such programming is made available to the public for a lower fee at unauthorized commercial establishments, which have not purchased the right to broadcast such programming, commercial establishments will find no reason to purchase the right to legally broadcast this type of programming. *See Id.* and Exhibit B(3).

29. Given the benefits which Defendants received from the broadcast of the Program (charging customers $35 per ticket or $10 for a child's ticket for children 7 and up in addition to the revenue from sales during the Program and establishing good will by providing access to the Program) and the types of damages Plaintiff suffered, it is fair and reasonable to assess damages against Defendants and award to Plaintiff statutory damages in the amount of $10,000.00.

### 3. DAMAGES FOR WILLFUL ACT UNDER 47 U.S.C. § 605(e)(3)(C)(ii)

30. Plaintiff also requests damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) in light of Defendants' actions being willful and "for purposes of direct or indirect commercial advantage or private financial gain." In *ON/TV of Chicago v. Julien*, 763 F.2d 839, 844 (7th Cir. 1985), the Court of Appeals for the Seventh Circuit interpreted willful under the statute as "disregard for the governing statute and an indifference to its requirements." *Id.* at 844 (quoting *TransWorld Airlines, Inc. v. Thurston*, 469 U.S. 111, 127 (1985)).

31. Defendants specifically and willfully acted to illegally intercept the transmissions of the Program for Defendants' commercial advantage, because Defendants could not have "innocently" accessed the broadcast of the Program.[9] *See* Exhibit B at ¶¶ 10-12.

---

[9] *See Joe Hand Promotions, Inc. v. Malespin*, 2001 U.S. Dist. LEXIS 2037, at *9-10 (S.D.N.Y. Feb. 27, 2001)(Nathaniel, K.)("The respective defendants elected not to enter into contracts with plaintiff to obtain the transmission of the Program. Their only means of obtaining the Program, and to avoid paying the legal subscription rate for a commercial establishment, would be: (a) using an illegal descrambler in a satellite receiver; (b) using a pirate cable box; (c) registering their respective commercial establishments as residential sites rather than commercial; and (d) ordering the Program for their respective residences and moving their residential cable boxes to their commercial establishments. The Court finds that employing ***any one*** of these means to defraud plaintiff would be evidence of willfulness and would support an award of enhanced damages.")(emphasis added).

32. Defendants knew or should have known that it was wrong to receive, intercept, and divert the scrambled signal of the Program and to broadcast it in Defendants' commercial Establishment. *See KingVision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp.2d 438, 442 (S.D.N.Y. 2001); *see also Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp.2d 485, 490 (S.D.N.Y. 1999)(when finding willfulness the court stated, "there can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain. *Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.*")(emphasis added). *See also KingVision Pay-Per-View, Ltd. v. Valles*, EP-CA-179-DB, 2001 U.S. Dist. LEXIS 24268, at *9 (W.D. Tex. March 30, 2001)(Briones, D.)("While Defendants may not have been well-versed in the statutory restrictions on the unauthorized interception of satellite transmissions, the Court finds that *there must have been some knowledge on the part of Defendants* that such interception could not be had for free.")(emphasis added).

33. Defendants' purpose and intent in exhibiting the Program was to secure a private financial gain and direct commercial advantage by pirating Plaintiff's licensed exhibition and infringing upon Plaintiff's rights while avoiding proper payment to Plaintiff as shown in the following evidence: [10]

[10] *See J&J Sports Productions, Inc. v. Papagallos 1, Inc.*, Civil Action No. A-08-CA-691-SS (W.D.Tex. April 17, 2009)(Sparks, S.) Order (Doc. No. 13)("The undisputed evidence establishes the [Program] was broadcast to paying customers of Defendant's commercial establishment and thus the violation was for commercial advantage or private gain.").

a. The Establishment required the purchase of tickets at $35 each for adults and $10 each for children ages 7 and up for patrons to enter the Establishment to view the Program. *See* Exhibit B at ¶ 9 and Exhibit B(3).

b. The Establishment is a business that sold drinks on the date of the Program. *See* Exhibit A and Exhibit B(3).

c. Patrons who entered the commercial Establishment viewed the pirated Program on multiple televisions. *See* Exhibit B at ¶ 9 and Exhibit B(3).

d. The Establishment advertised the broadcast of the Program at the Establishment to lure patrons to their Establishment to spend money by advertising in the newspaper, advertising on social media from August 16, 2017 to August 26, 2017, and advertising on the Establishment's marquee. *See* Exhibit B(3).

34. Given the above, Defendants' actions were clearly willful and for a commercial advantage warranting additional damages under the Communications Act.[11]

35. Generally, it is reasonable to increase an actual or statutory damages award by a specific percentage to penalize Defendants for willful acts.[12] Therefore, pursuant to Section 605(e)(3)(C)(ii), in addition to the reasons set forth above, the minimum amount of Fifty Thousand Dollars ($50,000.00)(or five times the amount of statutory damages, if $10,000.00 in statutory damages awarded) should be awarded to Plaintiff. The following authority also supports an award of additional damages:

a. To deter future pirating of cable and satellite broadcasts. *See*, e.g., *KingVision Pay-Per-View, Ltd. v. Scott E.'s Pub, Inc.*, 146 F. Supp.2d 955, 959-60 (E.D.Wis. 2001) (discussing multipliers of three to eight (3 to 8) times the statutory damages as additional damages in order to deter future communication theft).

[11] *See Id.*

[12] *See* e.g., *Lauratex*, 519 F. Supp. at 733 (increase of seven times the actual damages for willful acts); *Cable/Home*, 902 F.2d 829 (additional damages of five times actual damages for willful conduct); and *Entertainment by J&J, Inc.*, 219 F. Supp.2d at 777 (S.D. Tex. 2002)(the court awarded three times statutory damages for willful violations).

b. To deter actions involving theft, fraud and conversion. *See Entertainment by J&J, Inc. v. Tia Maria Mexican Restaurant & Cantina, Inc.*, 97 F. Supp.2d 775, 778-779 (S.D.Tex. 2000)(Gilmore, V.)("[a] suit for illegal reception and broadcast of a cable signal implicates several areas of the law [including fraud and theft]."); and *ProStar v. Massachi*, 239 F.3d 669, 675 (5th Cir. 2001)(analogizes violation under Communications Act to conversion).

**F. ATTORNEY'S FEES AND COSTS**

36. Plaintiff requests an award of attorney's fees and costs pursuant to Section 605(e)(3)(B)(iii). Under Section 605(e)(3)(B)(iii), the award of attorney's fees is mandatory. According to Section 605(e)(3)(B)(iii), "[t]he Court...shall direct the recovery of full costs, including awarding reasonable attorneys' fees..."

37. Plaintiff seeks an attorney's fees award for the prosecution of this action against Defendants through the final default judgment requested and for future work on this case to collect any judgement as well as fees for any post-judgment, pre-appeal motions, and for any appeal. *See* Exhibit C. In addition, Plaintiff seeks an award of costs, which costs have been proven by affidavit with the attached service of process invoices. *See* Exhibit C at ¶ 8 and Exhibit C(1).

**G. CONCLUSION**

38. As shown herein, Defendants, willfully and for purposes of direct or indirect commercial advantage or private financial gain, illegally received the closed-circuit telecast of the Program and exhibited the Program in Defendants' commercial Establishment without authorization and without paying the licensing fee to Plaintiff. Accordingly, pursuant to the Communications Act and the statutory damages permitted thereunder, Plaintiff seeks the entry of a final default judgment in favor of Plaintiff and against Defendants for the relief sought in this Motion.

## H. PRAYER

Plaintiff respectfully requests that the Court sign and cause to be entered a final default judgment in favor of Plaintiff, JOE HAND PROMOTIONS, INC. and against Defendants, JOLLY PARTNERS, LLC, d/b/a CASA DE LEON, LEONA SOCIAL CLUB NON PROFIT CORPORATION, d/b/a CASA DE LEON, and MOLLY T. GOMEZ awarding Plaintiff;

(1) Statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) from Defendants, jointly and severally, in the amount of $10,000.00; and

(2) Additional damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) from Defendants, jointly and severally, in the amount of $50,000.00; and

(3) Attorney's fees from Defendants, jointly and severally, in the amount of the hourly time presented in the Affidavit for Attorney's Fees and Costs (for prosecution of this case through the final default judgment); along with attorney's fees for post-trial or appellate services; and

(4) Costs from Defendants, jointly and severally, in the amount of $995.00; and

(5) Post-judgment interest at the highest lawful rate; and

(6) Such other and further relief to which Plaintiff is entitled.

Respectfully submitted,

JAMIE KING, P.C.

*/s/ Jamie King*
Jamie King
Attorney-in-Charge
State Bar No. 24043755
P.O. Box 5757
Kingwood, Texas 77325
(832) 584-0106 Telephone
(888) 247-0443 Facsimile
jamie@jamiekingpc.com

ATTORNEYS FOR PLAINTIFF,
JOE HAND PROMOTIONS, INC.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 1st day of July, 2020, a true and correct copy of the foregoing was served as follows:

*Via U.S. Mail, Postage Prepaid and Certified Mail, Return Receipt Requested upon:*

Leona Social Club Non Profit Corporation,
d/b/a Casa De Leon
c/o Molly T. Gomez
4606 Eilers Ave., Unit A
Austin, Texas 78751

Jolly Partners, LLC, d/b/a Casa De Leon
c/o Molly T. Gomez
4606 Eilers Ave., Unit A
Austin, Texas 78751

Molly T. Gomez
4606 Eilers Ave., Unit A
Austin, Texas 78751

Jayson Eoff
1074 CR 420
Jewett, Texas 75846

*/s/ Jamie King*
Jamie King

7/1/2020
Date